UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALRELIO EVANS,

              Plaintiff,              Case No. 1:19-cv-953

v.                                        Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

              Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss: Plaintiff's claims under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment equal protections rights; Plaintiff's claims under 42 U.S.C. § 1983 for violation of his First Amendment free exercise rights by virtue of requiring Plaintiff to conduct private exercise of his religion in his cell; Plaintiff's claims for conspiracy under 42 U.S.C. § 1985; Plaintiff's claims under the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. No. 103-141, 107 Stat. 1488 (1993), codified at 42 U.S.C. § 2000bb *et seq.*; Plaintiff's claims for damages

against Defendant Washington in her official capacity; and Plaintiff's claims for damages under the Religious Land Use and Institutionalized Persons Act (RLUIPA), Pub. L. No. 106-274, 114 Stat. 803 (2000), codified at codified at 42 U.S.C. §§ 2000bb-2, 2000bb-3, and 2000cc *et seq*. The dismissal of those claims leaves Plaintiff's First Amendment claims for damages and injunctive and declaratory relief under 42 U.S.C. § 1983 against Defendants Curtis, Jackson, and Burrell in their personal capacity for violation of Plaintiff's First Amendment rights by virtue of applying the "five prisoner" rule and Plaintiff's claims for prospective injunctive and declaratory relief under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment free exercise rights and RLUIPA against Defendant Washington in her official capacity for maintaining and enforcing the "five prisoner" rule.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia County, Michigan and the E. C. Brooks Correctional Facility, (LRF) in Muskegon County, Michigan. Plaintiff sues RMI Chaplain Unknown Curtis, LRF Warden Shane Jackson, LRF Chaplain Onesiphorus Burrell, and MDOC Director Heidi Washington. Defendant Washington is sued only in her official capacity; the other Defendants are sued only in their respective personal capacities. (Compl., ECF No. 1, PageID.11.)

Plaintiff identifies his religion as Jehovah's Witness. (Program Classification Report, ECF No. 1-2, PageID.37.) That religion is recognized by the MDOC and the department's Religious Groups Handbook notes that adherents are required to study the Bible daily and to attend corporate group study meetings weekly. (Religious Groups Handbook, ECF No. 1-3, PageID.43.)

2

On May 17, 2019, Plaintiff was housed at RMI. He asked Chaplain Curtis to arrange to have Plaintiff called out for the Jehovah's Witness group service. In Plaintiff's request to Chaplain Curtis, Plaintiff claimed that under the authority of *Kensu v. Cason*, No. 1:91-cv-300, 1996 U.S. Dist. LEXIS 5468 (W.D. Mich. Mar. 29, 1996), he should be permitted to attend a Jehovah's Witness service even if he were the only adherent. (May 17, 2019 Correspondence, ECF No. 1-1, PageID.32.) Plaintiff claimed that unless he was provided access to the chapel for a one-person group service, he would be unable to exercise his religion because of extreme noise and constant distractions in his housing unit.

Despite Plaintiff's citation to authority and claim of an inability to otherwise exercise his religion, Chaplain Curtis denied Plaintiff's request. Chaplain Curtis explained that there were no Jehovah's Witness group services because there was not a sufficient number of adherents asking for such services as required by MDOC policy. MDOC policy provides:

> Group religious services shall be offered at all institutions for prisoners belonging to a recognized religious group. . . . a service is not required to be conducted if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group.

(MDOC Policy Directive 05.03.150, ECF No. 1-7, PageID.161.) Plaintiff was transferred a month later.

Plaintiff eventually ended up at LRF. On August 3, 2019, Plaintiff sent to LRF Chaplain Burrell and LRF Warden Jackson, a request to attend group services similar to the one that he had sent to Chaplain Curtis at RMI. (Aug. 3, 2019, Correspondence, ECF No. 1-1, PageID.27-28.) It does not appear that Plaintiff ever received a response. (Compl., ECF No. 1, PageID.12.) Nonetheless, two days later, Plaintiff filed a grievance against Burrell and Jackson. (August 5, 2019, Grievance, ECF No. 1-1, PageID.26.) Plaintiff was transferred a month later, presumably to URF where he presently resides.

3

Plaintiff notes that he attended Jehovah's Witness services alone at the Gus Harrison Correctional Facility (ARF) in Lenawee County, Michigan. Thus, he contends, the "five prisoner" requirement for group services is not enforced at every prison in Michigan. Plaintiff's interpretation is certainly possible; however, it is also possible that five prisoners requested group services but simply did not attend each service. Plaintiff has also been able to attend Jehovah's Witness group services at RMI during a previous stay when the "five prisoner" rule was satisfied. *Evan et al. v. Prisk et al.*, No. 2:17-cv-46 (W.D. Mich.) (Plaintiff's Reply Br., ECF No. 85, PageID.512.) Nonetheless, Plaintiff claims that Jehovah's Witness adherents are treated differently than Catholic, Protestant, Moorish Science Temple of America, Buddhist, Al Islam, and Nation of Islam adherents, who are permitted to attend group services.

Based on these allegations, Plaintiff asserts that Defendants Curtis, Jackson, and Burrell violated Plaintiff's First Amendment right to free exercise of his religion by denying Plaintiff's request to attend religious services as a Jehovah's Witness. Plaintiff accuses Defendants Curtis, Jackson, and Burrell of violating plaintiff right to equal protection under the Fourteenth Amendment by not allowing Jehovah's Witness adherents to attend services in the chapel, but allowing other religions to do so. Plaintiff claims all four Defendants violated his rights by conspiring to apply the "five prisoner" requirement to prevent Plaintiff from participating in group services in violation of 42 U.S.C. § 1985. Plaintiff claims all four Defendants violated his rights under the Religious Freedom Restoration Act. Finally, Plaintiff claims that Defendant Washington violated his rights under the First Amendment Free Exercise Clause, RLUIPA, and the Fourteenth Amendment Equal Protection clause by maintaining and enforcing the "five prisoner" requirement.

This is not Plaintiff's first lawsuit raising the substance of these allegations—although it is the first time he has raised such allegations against these Defendants. In *Evans et al. v. Prisk et al.*, No. 2:17-cv-46 (W.D. Mich.) (*Evans I*), Plaintiff sued Marquette Branch Prison (MBP) Chaplain Thomas Prisk and MBP Warden Robert Napel claiming that Prisk and Napel applied the "five prisoner" rule to deny Plaintiff group worship service at MBP. In *Evans I*, the Court dismissed Plaintiff's challenge to the "five prisoner" rule, as applied to him at MBP, on qualified immunity grounds.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. Sovereign immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010).

Plaintiff sues Defendant Washington in only her official capacity. A suit against an individual in her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, the Court also dismisses Plaintiff's claims for monetary relief against Defendant Washington.

An official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Therefore, to the extent Plaintiff's complaint states a claim against Defendant Washington, he may proceed with his request for prospective injunctive relief against her.

### IV. RFRA

In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court declared RFRA to be unconstitutional as applied to state and local governments. Congress responded by amending RFRA with RLUIPA, excluding from the protections of RFRA burdens on the exercise of religion imposed by the states or their subdivisions. RLUIPA, PL 106-274, § 7, 114 Stat. 803 (2000). Allegations seeking relief against the State of Michigan, its subdivisions, or officers and employees under RFRA, therefore, fail to state a claim. *Elohim v. Williams*, No. 96-2276, 1997 WL 589262, at *1 (6th Cir. Sept. 23, 1997); *Riggins-El v. Toombs*, No. 96-2484, 1997 WL 809980, at *1 (6th Cir. Dec. 23, 1997).

### V. § 1985 conspiracy

Section 1985 of Title 42 United States Code provides:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Plaintiff contends these Defendants have conspired to violate his equal protection rights.

Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga*

7

*Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510).[1] Recently, in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985, recognizing that in both contexts, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (the MDOC). Indeed, Plaintiff indicates that Defendant Washington is responsible for the promulgation of the policy—the "five prisoner" rule—that deprived Plaintiff of equal protection of the laws, and that the other Defendants enforced that policy to his detriment. Plaintiff does not allege, much less show, that Defendants were acting outside the scope of their employments.

The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*,

---

[1] The Supreme Court has neither adopted nor rejected application of the intracorporate conspiracy doctrine to claims under 42 U.S.C. § 1985. *Ziglar v. Abasi*, 137 S. Ct. 1843, 1867-69 (2017) (citing *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 n. 11 (1979)).

8

798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Because Plaintiff alleges that Defendants Curtis, Jackson, and Burell were enforcing an MDOC policy, he has foreclosed any inference that those Defendants acted outside the scope of their employment when they took the allegedly unconstitutional action. *See Barrow v. City of Hillview*, 775 F. App'x 801, 808 (6th Cir. 2019) (the court's analysis suggests that execution of corporate policy would necessarily fall within the scope of employment); *McCumons v. Marougi*, No. 08-11164-BC, 2011 WL 308960, at *4 (E.D. Mich. Jan. 27, 2011) (allegations that defendants were acting to further a city policy required dismissal of § 1985 claim). Accordingly, Plaintiff has failed to state a claim for violation of 42 U.S.C. § 1985.

## VI. Free exercise

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely-held religious beliefs. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224-25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief

9

or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

Plaintiff's assertions can be interpreted as alleging at least two distinct infringements on the free exercise of his religion. The primary infringement flows from the "five prisoner" rule: that rule deprives him of group religious services which the MDOC's own Religious Groups Handbook describes as "required." The other infringement flows from being required to practice his religion in his cell, with a potentially uncooperative cellmate, surrounded by distractions.

Petitioner does not allege that there were other Jehovah's Witness adherents who wanted to participate in group services at either RMI or LRF. If there were no other adherents, he was not burdened by the "five prisoner" requirement. In that circumstance, there would be no group to participate in services. The policy applies only to "group religious services;" the policy would not apply to him—it would not burden him at all—and his claim would collapse into an assertion that he was not able to participate in the individual exercise of his religion in his cell. If there were other adherents, but less than five adherents, the policy would "burden" him; but, his

inability to individually exercise his religion in his cell[2] would still constitute an additional and separate burden.

For purposes of this preliminary review, the Court will construe Plaintiff's allegations as claiming that there were adherents in addition to him that requested Jehovah's Witness group services, but that there were, in total, fewer than five such adherents. Under that circumstance, in light of the requirement for group services recognized in the handbook, it would appear that Plaintiff has alleged a substantial burden on the free exercise of his religion by application of the "five prisoner" requirement.

The fact that the presence of a cellmate may have some impact on Plaintiff's ability to freely exercise his religion, however, does not mean the presence of a cellmate is a substantial burden. A burden is substantial where it "force[s] an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]'" *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). On the other hand, a burden is not substantial when "although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs." *Id*. (citing *Lyng v. NW. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)).

Plaintiff's allegations indicate that a cellmate is a distraction, not because that cellmate is deliberately interfering with Plaintiff's worship, but because he is present. In the

---

[2] The MDOC Religious Groups Handbook indicates that Jehovah's Witness adherents are also called upon to individually study the Bible (or, additionally, perhaps other religious texts). (Religious Groups Handbook, ECF No. 1-3, PageID.43-44.) Other than proselytizing—an activity that is not permitted under MDOC policy directive without the consent of the "proselytizee," MDOC Policy Directive 05.03.150, ¶ C, and which Plaintiff claims is practically impossible given his security level, (Compl., ECF No. 1, PageID.13)—Plaintiff does not mention any other religious practice that Defendants have hampered.

11

Michigan prison system, the limitations caused by a cellmate's mere presence necessarily flow from the fact of incarceration. *See O'Lone*, 482 U.S. at 348 (recognizing that limitations on constitutional rights may arise from, and be justified by, valid penological objectives; others arise from the fact of incarceration). The natural consequences of having a cellmate may be an inconvenience. It may make private worship more difficult. But, it does not pressure Plaintiff to violate his religious beliefs. Therefore, the presence of a cellmate is not a substantial burden on the free exercise of Plaintiff's religion imposed by these Defendants. Accordingly, to the extent Plaintiff seeks to raise a stand-alone claim premised on the distraction caused by the presence of a cellmate, he has failed to state a claim.

Because the "five prisoner" requirement might be a substantial burden, the Court must next consider whether that burden is permitted because it is "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

In *Spies v. Voinovich*, 173 F.3d 398 (6th Cir. 1999), the Sixth Circuit upheld an Ohio "five prisoner" requirement similar to the one imposed by the MDOC. The appellate court concluded that, in applying the *Turner* factors, Ohio's "five prisoner" requirement has a rational connection to "maintaining security and allocating prison resources." *Id*. at 404. Based, in part, on *Spies*, the Sixth Circuit has upheld the grant of summary judgment on qualified immunity grounds in favor of MDOC officials for applying the MDOC's version of the "five prisoner" requirement:

> Chaplain Riley is similarly entitled to qualified immunity on Colvin's claims regarding the lack of Jewish services and literature in the prison library because Riley's actions were reasonable. He justified the lack of Jewish services by noting that Colvin was the only inmate requesting them and that, under LMF policies, a minimum number of inmates must request religious services before they will be held.
>
> This court has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services. *See, e.g., Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir.1999) (concluding that a prison's requirement that a minimum of five inmates of a particular faith must be interested in forming a faith group before the prison will provide for religious services has a "valid, rational connection to legitimate government interests in maintaining security and allocating prison resources"); *Hall v. Tyszkiewicz*, 28 Fed. Appx. 493, 495-96 (6th Cir.2002) (holding that an inmate was not deprived of his constitutional rights where the prison did not hold Jewish services due to a lack of interest, and where a rabbi visited the inmate once a month); *Bruton v. McGinnis*, 110 F.3d 63, 1997 WL 139797, at *3 (6th Cir. Mar. 26, 1997) (unpublished table decision) ("Scheduling constraints make it clearly unreasonable to provide separate group services for every religious sect that may arise."). In addition, Colvin points to no restrictions on his ability to practice Judaism privately, read Jewish literature, or correspond with other practitioners of the Jewish faith.

*Colvin v. Caruso*, 605 F.3d 282, 291-92 (6th Cir. 2010). Indeed, this Court granted summary judgment on Plaintiff's First Amendment claims in *Evans I* based on the authority of *Spies* and *Colvin*. *Evans I* (Report & Recommendation, ECF No. 107, PageID.716-718.) The same result may obtain here, but assessing the policy under *Turner* or application of the qualified immunity doctrine are fact-specific inquiries beyond the scope of preliminary review under 28 U.S.C.

§§ 1915(e)(2) and 1915A or 42 U.S.C. § 1997e(c). Accordingly, Plaintiff's First Amendment free exercise allegations premised on application of the "five prisoner" requirement may proceed.

## VII. RLUIPA

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in "free exercise" decisions. *Living Water*, 258 F. App'x at 733-34. Accordingly, because the only potentially substantial "free exercise" burden alleged by Plaintiff is the application of the "five prisoner" requirement, that is the only potentially substantial RLUIPA burden as well. Plaintiff's claim that private exercise of his religion in his cell is burdened by the presence of a cellmate does not state a RLUIPA claim.

Plaintiff's complaint seeks damages, declaratory relief, and injunctive relief. He does not indicate which of his claims warrants each kind of relief. To the extent Plaintiff seeks damages under RLUIPA, his claim fails. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. Plaintiff's RLUIPA claim seeking prospective declaratory and injunctive relief against Defendant Washington in her official capacity for maintaining and enforcing the "five prisoner" requirement suffices to state a claim.

14

## VIII. Equal protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (holding that to be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff's equal protection allegations are presented in just a couple of sentences in his complaint:

> Prisoners who were Catholic, Protestant, M.S.T. of A., Buddhist, Al Islam, and Nation of Islam were allowed to attend their services, but Jehovah's Witnesses were not.

\* \* \*

> Defendants Curtis, Jackson and Burrell violated Plaintiff's Fourteenth Amendment Right to Equal Protection under the law by discriminating against Jehovah's Witness prisoners by not allowing Plaintiff to attend Jehovah's Witness service, while allowing every other recognized religious group who request service to meet and practice in the chapel building.

(Compl., ECF No. 1, PageID.12, 14.) Plaintiff does not allege that the other religious groups failed to satisfy the "five prisoner" requirement. Satisfaction of the "five prisoner" requirement would appear to be a relevant differentiating circumstance that, in light of the policy, would distinguish the Defendants' treatment of Plaintiff and entirely undercut Plaintiff's equal protection claim against them.

Plaintiff also does not allege that Defendants Curtis, Jackson, and Burrell intended to discriminate against Jehovah's Witness adherents. In light of Plaintiff's prior admission that he has participated in Jehovah's Witness group services at RMI during a previous period of incarceration, his allegations do not support an inference that Defendants bore any discriminatory intent against Jehovah's Witness adherents. At best, he appears to allege that the Defendants' application of the policy had a disparate impact on Jehovah's Witness adherents because that religion is not as "popular" among inmates in Plaintiff's security classification or in the MDOC. But, "mere disparate impact is not sufficient to state an equal protection claim under § 1983." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (citing *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)). Therefore, Plaintiff has failed to state a claim for violation of his equal protection rights.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines the following claims are properly dismissed on grounds of immunity or for failure to state a claim: Plaintiff's claims under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment equal protection rights; Plaintiff's claims under 42 U.S.C. § 1983 for violation of his

16

First Amendment free exercise rights by virtue of Defendants requiring Plaintiff to conduct private exercise of his religion in his cell; Plaintiff's claims for conspiracy under 42 U.S.C. § 1985; Plaintiff's claims under the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. No. 103-141, 107 Stat. 1488 (1993), codified at 42 U.S.C. § 2000bb *et seq.*; Plaintiff's claims for damages against Defendant Washington in her official capacity; and Plaintiff's claims for damages under the Religious Land Use and Institutionalized Persons Act (RLUIPA), Pub. L. No. 106-274, 114 Stat. 803 (2000), codified at 42 U.S.C. §§ 2000bb-2, 2000bb-3, and 2000cc *et seq.* The dismissal of those claims leaves Plaintiff's First Amendment claims for damages and injunctive and declaratory relief under 42 U.S.C. § 1983 against Defendants Curtis, Jackson, and Burrell in their personal capacity for violation of Plaintiff's First Amendment rights by virtue of applying the "five prisoner" rule as well as Plaintiff's claims for prospective injunctive and declaratory relief under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment free exercise rights and RLUIPA against Defendant Washington in her official capacity for maintaining and enforcing the "five prisoner" rule.

An order consistent with this opinion will be entered.


Dated: December 20, 2019 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge