UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALRELIO EVANS,

    Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

    Defendants.
_____/

Case No. 1:19-cv-953

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Alrelio Evans, a state prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on a "motion for summary judgment" filed by defendants Burrell, Curtis, Jackson and Washington (ECF No. 40). Despite the motion's title, this is a combined motion seeking both summary judgment pursuant to Fed. R. Civ. P. 56(a) and dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

**I.**    **Background**

Plaintiff's complaint involves incidents which occurred at the Michigan Reformatory (RMI) and the E. C. Brooks Correctional Facility (LRF). Plaintiff sues RMI Chaplain Curtis, LRF Warden Shane Jackson, LRF Chaplain Onesiphorus Burrell, and MDOC Director Heidi Washington. Chaplain Curtis, Warden Jackson, and Chaplain Burrell are being sued in their individual capacities, while Director Washington is being sued in her official capacity. *See* Opinion (ECF No. 10, PageID.239).

1

The Court summarized plaintiff's claims as follows:

Plaintiff identifies his religion as Jehovah's Witness. (Program Classification Report, ECF No. 1-2, PageID.37.) That religion is recognized by the MDOC and the department's Religious Groups Handbook notes that adherents are required to study the Bible daily and to attend corporate group study meetings weekly. (Religious Groups Handbook, ECF No. 1-3, PageID.43.)

On May 17, 2019, Plaintiff was housed at RMI. He asked Chaplain Curtis to arrange to have Plaintiff called out for the Jehovah's Witness group service. In Plaintiff's request to Chaplain Curtis, Plaintiff claimed that under the authority of *Kensu v. Cason*, No. 1:91-cv-300, 1996 U.S. Dist. LEXIS 5468 (W.D. Mich. Mar. 29, 1996), he should be permitted to attend a Jehovah's Witness service even if he were the only adherent. (May 17, 2019 Correspondence, ECF No. 1-1, PageID.32.) Plaintiff claimed that unless he was provided access to the chapel for a one-person group service, he would be unable to exercise his religion because of extreme noise and constant distractions in his housing unit.

Despite Plaintiff's citation to authority and claim of an inability to otherwise exercise his religion, Chaplain Curtis denied Plaintiff's request. Chaplain Curtis explained that there were no Jehovah's Witness group services because there was not a sufficient number of adherents asking for such services as required by MDOC policy. MDOC policy provides:

> Group religious services shall be offered at all institutions for prisoners belonging to a recognized religious group. . . . a service is not required to be conducted if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group.

(MDOC Policy Directive 05.03.150, ECF No. 1-7, PageID.161.) Plaintiff was transferred a month later.

Plaintiff eventually ended up at LRF. On August 3, 2019, Plaintiff sent to LRF Chaplain Burrell and LRF Warden Jackson, a request to attend group services similar to the one that he had sent to Chaplain Curtis at RMI. (Aug. 3, 2019, Correspondence, ECF No. 1-1, PageID.27-28.) It does not appear that Plaintiff ever received a response. (Compl., ECF No. 1, PageID.12.) Nonetheless, two days later, Plaintiff filed a grievance against Burrell and Jackson. (August 5, 2019, Grievance, ECF No. 1-1, PageID.26.) Plaintiff was transferred a month later, presumably to URF [Chippewa Correctional Facility] where he presently resides.

Plaintiff notes that he attended Jehovah's Witness services alone at the Gus

2

Harrison Correctional Facility (ARF) in Lenawee County, Michigan. Thus, he contends, the "five prisoner" requirement for group services is not enforced at every prison in Michigan. Plaintiff's interpretation is certainly possible; however, it is also possible that five prisoners requested group services but simply did not attend each service. Plaintiff has also been able to attend Jehovah's Witness group services at RMI during a previous stay when the "five prisoner" rule was satisfied. *Evan et al. v. Prisk et al.*, No. 2:17-cv-46 (W.D. Mich.) (Plaintiff's Reply Br., ECF No. 85, PageID.512.) Nonetheless, Plaintiff claims that Jehovah's Witness adherents are treated differently than Catholic, Protestant, Moorish Science Temple of America, Buddhist, Al Islam, and Nation of Islam adherents, who are permitted to attend group services.

Based on these allegations, Plaintiff asserts that Defendants Curtis, Jackson, and Burrell violated Plaintiff's First Amendment right to free exercise of his religion by denying Plaintiff's request to attend religious services as a Jehovah's Witness. Plaintiff accuses Defendants Curtis, Jackson, and Burrell of violating plaintiff [sic] right to equal protection under the Fourteenth Amendment by not allowing Jehovah's Witness adherents to attend services in the chapel, but allowing other religions to do so. Plaintiff claims all four Defendants violated his rights by conspiring to apply the "five prisoner" requirement to prevent Plaintiff from participating in group services in violation of 42 U.S.C. § 1985. Plaintiff claims all four Defendants violated his rights under the Religious Freedom Restoration Act. Finally, Plaintiff claims that Defendant Washington violated his rights under the First Amendment Free Exercise Clause, RLUIPA, and the Fourteenth Amendment Equal Protection clause by maintaining and enforcing the "five prisoner" requirement.

This is not Plaintiff's first lawsuit raising the substance of these allegations— although it is the first time he has raised such allegations against these Defendants. In *Evans et al. v. Prisk et al.*, No. 2:17-cv-46 (W.D. Mich.) (*Evans I*), Plaintiff sued Marquette Branch Prison (MBP) Chaplain Thomas Prisk and MBP Warden Robert Napel claiming that Prisk and Napel applied the "five prisoner" rule to deny Plaintiff group worship service at MBP. In *Evans I*, the Court dismissed Plaintiff's challenge to the "five prisoner" rule, as applied to him at MBP, on qualified immunity grounds.

Opinion (ECF No. 10, PageID.239-242).

The Court dismissed a number of claims on initial screening, leaving plaintiff with the following claims:

A § 1983 claim for damages, injunctive, and declaratory relief against RMI Chaplain Curtis, LRF Warden Jackson, and LRF Chaplain Burrell, in their personal capacities, because they violated plaintiff's First Amendment rights by applying the MDOC's "five prisoner" rule;

A § 1983 claim for prospective injunctive and declaratory relief against MDOC Director Washington, in her official capacity, because she violated plaintiff's First Amendment rights by maintaining and enforcing the "five prisoner" rule; and,

A Religious Land Use and Institutionalized Persons Act (RLUIPA)[1] claim for prospective injunctive and declaratory relief against Director Washington, in her official capacity, for maintaining and enforcing the "five prisoner" rule.  *Id*. at PageID.254.

## II.    Defendants' motion for summary judgment

### A.    Legal standard for summary judgment

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[1] *See* Pub. L. No. 106-274, 114 Stat. 803 (2000), codified at 42 U.S.C. §§ 2000bb-2, 2000bb-3, and 2000cc et seq. PageID.239.

4

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).[2] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does

---

[2] The MDOC revised the grievance policy on March 18, 2019. It appears that all of plaintiff's grievances referenced in this report were filed under the 2019 policy except for RMI-19-03-0452-21B (ECF No. 41-12) and RMI-19-0453-28A (ECF No. 41-14). These two grievances were filed while the previous (July 9, 2007) version of the policy was in effect. However, the timing of these filings does not affect the Court's analysis in this case because both versions of the policy contain the same operative elements (*i.e.*, the requirements and procedures for filing grievances). *See* PD 03.02.130 (eff. July 9, 2007) ( ¶¶ P, R, B, VV, and FF).

not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

All of plaintiff's claims relate to defendants' enforcement of the "five prisoner" rule applicable to group religious services. The question before the Court is whether plaintiff properly exhausted a grievance regarding these claims.

#### a. Grievances related to RMI Chaplain Curtis

In their brief, defendants address ten grievances filed by plaintiff at RMI during 2019. Defendants' Brief (ECF No. 41, PageID.421-423). Defendants contend that plaintiff did not properly exhaust a grievance in which he complained that Director Washington, RMI Chaplain Curtis, LRF Warden Jackson, or LRF Chaplain Burrell violated his First Amendment rights or RLUIPA by virtue of applying, maintaining, or enforcing the "five prisoner" rule, as alleged in his complaint. The evidence attached to defendants' brief supports this contention. *See* MDOC Prisoner Step III Grievance Report (ECF No. 41-4); Individual RMI grievances (ECF Nos. 41-5 to 41-14).[3]

In his response, plaintiff contends that Chaplain Curtis was the only defendant employed at RMI, and that two other defendants, Warden Jackson and Chaplain Burrell, were employed at LRF. *See* Plaintiff's Response (ECF No. 45, PageID.560-561). With respect to

---

[3] The Court notes that defendants incorrectly identified their e-filed Exhibit G (ECF No. 41-8) as RMI-19-05-0880-28E. The actual grievance number is RMI-19-07-1145-27A.

RMI Chaplain Curtis, plaintiff contends that he exhausted a relevant grievance, RMI-19-05-0879-20B ("879"). In this regard, plaintiff attached a copy of Grievance 879 to his complaint. *See* Grievance 879 (ECF No. 1-1, PageID.34). Grievance 879 lists an incident date of May 17, 2019, and claims that RMI "Chaplin [sic] & Warden" denied him access for mandatory weekly Jehovah's Witness services in violation of his First Amendment rights and RLUIPA. *Id*. The MDOC interviewed plaintiff and denied the grievance on June 5, 2019. *See* Step I Grievance Response Supplemental Form (ECF No. 1-1, PageID.35). The records reflect that defendant Curtis was the RMI Chaplain at that time. *Id*.

In their reply (ECF No. 48), defendants provided a copy of the Step II response to grievance 879 (ECF No. 48-3, PageID.583), but point out that that there is no record that plaintiff filed a Step III grievance against RMI Chaplain Curtis. In this regard, the Court notes that grievance 879 does not appear as one of the 193 grievances listed in plaintiff's MDOC Prisoner Step III Grievance Report (ECF No. 41-4).

Plaintiff responded by filing a sur-reply brief (ECF No. 49). Typically, the Court strikes an unauthorized sur-reply brief.[4] However, in this instance, plaintiff's sur-reply includes relevant documents, *i.e.*, copies of the Step II and Step III grievance decisions on Grievance 879 (ECF No. 49-2, PageID.605-606). The Court will not ignore these documents which appear to be part of the administrative record for grievance 879. Contrary to defendants' position, plaintiff has provided evidence that he exhausted grievance 879 on March 12, 2020, at which time the MDOC

---

[4] Parties are not allowed to file sur-reply briefs without the Court's permission. W.D. Mich. LCivR 7.2(c) provides that a party opposing a dispositive motion shall filed a responsive brief filed within 28 days after service of the motion, that the moving party may file a reply brief filed within 14 days after service of the response, and that "[t]he court may permit or require further briefing" (*e.g.*, a sur-reply brief).

stated in the Step III grievance decision that, "[u]pon examination it has been determined that your issue was in fact considered, investigated, and a proper decision rendered." Grievance 879 (ECF No. 49-2, PageID.606). The existence of this Step III grievance decision is inconsistent with plaintiff's MDOC Step III grievance report (ECF No. 41-4), which does not list grievance 879. Plaintiff's evidence creates a genuine issue of material fact as to whether he properly exhausted grievance 879 against RMI Chaplain Curtis. Accordingly, defendants' motion for summary judgment should be denied as to defendant Curtis.

### b. Grievances related to LRF Warden Jackson and LRF Chaplain Burrell

Defendants' brief did not identify any relevant grievances filed by plaintiff at LRF during 2019. *See* Defendants' Brief at PageID.421-423. In his response, plaintiff suggested that that defendants failed to address the grievances he filed at LRF. *See* Plaintiff's Response at PageID.560-561. In this regard, plaintiff's complaint included a copy of an unnumbered grievance from LRF, naming LRF Warden Jackson and LRF Chaplain Burrell, with an incident date of August 3, 2019. *See* Unnumbered LRF Grievance (ECF No. 1-1, PageID.26).

In their reply, defendants point out that plaintiff submitted a grievance at LRF, but the grievance was defective. Grievance Coordinator Tamika Pipkins advised plaintiff to correct the grievance and resubmit it. *See* Pipkins Affidavit (ECF No. 48-5, PageID.590-591). Pipkins' affidavit states in pertinent part that:

> On August 6, 2019, I received a grievance from prisoner Evans regarding religious services. (Attachment #1.) I reviewed the grievance and determined that Evans did not include in the grievance how and when he was denied his religious services. I sent Evans a correction memo on August 6, 2019, with instructions to make the necessary corrections and return the grievance to me to be processed. (Attachment #2.) I did this pursuant to OP 03.02.130, #5. (Attachment #3.) Evans failed to follow the instructions and did not return this grievance to me to be processed.

*Id*.

Consistent with the affidavit, the record includes a Memorandum from Grievance Coordinator Pipkins to plaintiff, dated August 6, 2019, advising plaintiff to correct and resubmit the grievance:

> **SUBJECT: Grievance Correction Required**
>
> Your Grievance is being returned to you for the following reason(s):
>
> _X_   Attempt to resolve your issue with the staff member's supervisor involved prior to filing This [sic] grievance . . .
>
> _X_   put a correct date in your date of incident/today's date/attempt to resolve
>
> _ X_   add the correct name(s) of staff involved or if unknown, time of incident . . . .
>
> **Make the above noted correction(s): And return to Grievance Coordinator**

Memorandum (ECF No. 48-5, PageID.594) (emphasis in original).

According to Pipkins, this memorandum was sent to plaintiff pursuant to Operating Procedure 03.02.130 ¶ 5 (eff. Dec, 19, 2003), which provides in pertinent part that the Step I Grievance Coordinator: "Determines if grievance is appropriately completed and is legible and, if not, returns to the prisoner for correction prior to assigning a grievance identifier." Operating Procedure (ECF No. 48-5, PageID.595).

Plaintiff has not presented any evidence to demonstrate that he corrected the grievance as directed by Grievance Coordinator Pipkins. In a declaration apparently directed at the LRF grievance, plaintiff states in pertinent part that:

> Plaintiff exhausted all available remedies by filing a Step I grievance but received no tracking number of response. The grievance coordinator suggested that I re-submit it with alterations, but that would've violated policy.

10

Therefore, Plaintiff exhausted his available administrative remedies according to controlling law.

Evans Decl. (ECF No. 49-1, PageID.603).

Plaintiff's vague declaration does not establish any factual or legal basis to demonstrate that he properly exhausted the unnumbered LRF grievance directed at LRF Warden Jackson and LRF Chaplain Burrell. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted as to LRF Warden Jackson and LRF Chaplain Burrell.

### c. Grievances related MDOC Director Washington

Neither of the grievances referenced by plaintiff, *i.e.*, RMI grievance 879 and the unnumbered LRF grievance, seek relief against Director Washington. There is no evidence that plaintiff properly exhausted a grievance against Director Washington. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment for should be granted as to Director Washington.

### III. Eleventh Amendment immunity

Finally, Director Washington seeks to dismiss plaintiff's "official capacity" claims on the basis of Eleventh Amendment immunity. *See* Opinion at PageID.239; Defendants' Brief at PageID.424-425. The Court's initial screening opinion recognized that "[a] suit against an individual in her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections" and proceeded to address Eleventh Amendment immunity at length. Opinion at PageID.243-244, 251.

With respect to plaintiff's § 1983 claim, the Court concluded that:

11

>An official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Therefore, to the extent Plaintiff's complaint states a claim against Defendant Washington, he may proceed with his request for prospective injunctive relief against her. . . .

*Id*. at PageID.244.

With respect to plaintiff's RLUIPA claim, the Court found that while plaintiff could not claim monetary relief under RLUIPA, the Eleventh Amendment was not a bar to recovering "appropriate relief against a government," and concluded that:

>Plaintiff's RLUIPA claim seeking prospective declaratory and injunctive relief against Defendant Washington in her official capacity for maintaining and enforcing the "five prisoner" requirement suffices to state a claim.

*Id*. at PageID.251.

Director Washington's Eleventh Amendment argument is not adequately briefed. In seeking dismissal, Director Washington does not address plaintiff's specific claims alleged in this case or this Court's review of Eleventh Amendment immunity; rather, she recites a definition of Eleventh Amendment immunity and includes an unadorned statement that she "enjoys Eleventh Amendment – or sovereign – immunity in her official capacity." Defendants' Brief at PageID.424-425. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, defendant Washington's motion to dismiss on the basis of Eleventh Amendment immunity should be denied.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment based on failure to exhaust (ECF No. 40) be **GRANTED** as to defendants Jackson, Burrell, and Washington, and **DENIED** as to defendant Curtis.

I further recommend that defendants Jackson, Burrell, and Washington be **DISMISSED** from this action.

I further recommend that defendant Washington's motion to dismiss (ECF No. 40) be **DENIED**.

Dated: February 12, 2021                      /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).